IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| K.R.,<br><br>       Plaintiff,<br><br>       v.<br><br>COMMISSIONER, SOCIAL SECURITY<br>ADMINISTRATION,<br><br>       Defendant. | Civil No. 20-07038 (RMB)<br><br>**OPINION** |

**BUMB**, United States District Judge:

This matter comes before the Court upon an appeal by Plaintiff from a denial of social security disability benefits.

For the reasons set forth below, the Court vacates the decision of the Administrative Law Judge ("ALJ") and remands for proceedings consistent with this Opinion's reasoning.

### I.    **STANDARD OF REVIEW**

When reviewing a final decision of an ALJ with regard to disability benefits, the Court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." 42 U.S.C. § 405(g); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "Substantial evidence" means "'more than a mere scintilla" or "such relevant evidence as a reasonable mind might accept as adequate." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938));

1

*Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the Court must determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *see also Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. *Sykes*, 228 F.3d at 262 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states the following:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i-v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i),

2

> 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019).

3

## II. FACTS

The Court recites herein only the facts that are necessary to its determination on appeal. Plaintiff, who was 36 years old on the alleged onset date, September 1, 2014, claims disability, in part, due to the following physical and mental impairments: left shoulder degenerative joint disease, degenerative disc disease, diabetes, obesity, diabetic retinopathy, abnormal kidney functioning, post-traumatic stress disorder ("PTSD"), major depressive disorder, diabetic macular edema, and diabetic neuropathy. Plaintiff's Brief at 2.

Plaintiff provides numerous medical records, including progress notes and treatment notes from different medical professionals and treatment facilities, documenting her various impairments. Plaintiff receives mental health treatment in Woodbury, New Jersey from Inspira Medical Center's Behavioral Health Services ("Inspira Behavioral Health"). *Id.* at 5. One of the documents provided by Plaintiff – the importance of which she stresses to the Court on appeal – is a "Mental Impairment Medical Source RFC Questionnaire" completed by Allen Fleischman, a licensed and accredited social worker at Inspira Behavioral Health who has been treating Plaintiff since March 2017. *Id.* at 6. Mr. Fleischman's completed questionnaire diagnoses Plaintiff with major depressive disorder and PTSD, states that her "baseline functioning will not permit employment," and expressly identifies two marked functional limitations (with respect to her ability to understand, remember, or apply information and her ability to interact with others)

4

and one extreme functional limitation (with respect to her ability to maintain concentration, persistence, or pace). Tr. 748-754.

Plaintiff also provides progress and treatment notes from her doctors, including her orthopedist, Matthew Kleiner, M.D., documenting her shoulder mobility limitations (Tr. 1018-1035), as well as her eye doctor Mitchell Fineman, M.D. (Tr. 1144-1151). Other relevant medical opinions in the record include those of consultative examiner Robert Joynes, M.D. (Tr. 372-377), and medical opinions of Nancy Simpkins, M.D. (Tr. 72-73) and Raymond Briski, M.D. (Tr. 96-98). Dr. Simpkins and Dr. Briski each issued a residual functional capacity ("RFC") assessment of their own with respect to Plaintiff's work limitations – Dr. Simpkins did so as part of the initial benefits determination process, and then Dr. Briski did so as part of the benefits reconsideration process. Dr. Simpkins and Dr. Briski each determined that Plaintiff's RFC includes, among other limitations, that she could stand and/or walk for no more than four hours in an eight-hour workday. Tr. 72, 97.

## III.   ALJ'S DETERMINATION

The ALJ found Plaintiff not disabled for purposes of social security benefits. At Step Two, the ALJ determined that only Plaintiff's left shoulder degenerative joint disease, degenerative disc disease, diabetes, and obesity were severe impairments. Tr. 16. The ALJ found that Plaintiff's retinopathy was nonsevere because of medical evidence in the record that Plaintiff's corrected vision has stayed

at 20/40 from March 2017 through October 2018 and not worsened, and that her kidney functioning was nonsevere since the record lacked evidence of any related complications or functional limitations. *Id.*

As for Plaintiff's mental impairments, the ALJ determined that her PTSD and depression, considered both singly and in combination, were also nonsevere at Step Two of the analysis. *Id.* The ALJ considered each of the four "Paragraph B" criteria for mental impairment consistent listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. First, with respect to the functional area of understanding, remembering, or applying information, the ALJ determined that Plaintiff had no limitation, citing progress notes from Inspira Behavioral Health that Plaintiff had "normal thoughts" and an "adequate fund of knowledge." Tr. 16. Second, the ALJ determined that Plaintiff had only a mild limitation in her ability to interact with others, referencing progress notes from Inspira Behavioral Health and Inspira Medical Center Woodbury that described her mood as "euthymic" and her affect as "appropriate." Tr. 17. Third, the ALJ found that Plaintiff had no limitation in concentrating, persisting, or maintaining pace, citing various treatment and progress notes that described her as alert and oriented. *Id.* Finally, the ALJ determined that Plaintiff had no limitation in adapting and managing herself, citing her hearing testimony that she cooks, does laundry with her children's help, and has gone on a vacation. *Id.*

Despite the fact that social worker Mr. Fleishman from Inspira Behavioral Health expressly addressed each of the Paragraph B factors in the Mental

6

Impairment Medical Source RFC Questionnaire, the ALJ granted it "little weight." *Id.* The ALJ concluded that Mr. Fleishman's findings were directly contradicted by the progress notes from Inspira Behavioral Health and Inspira Medical Center Woodbury that Plaintiff was oriented, had normal thoughts, and was "recovering well from down moods." *Id.*

At Step Three, the ALJ found that none of Plaintiff's impairments (or any combination thereof) meet or medically equal the severity of any of the listed impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Then, at Step Four, the ALJ determined Plaintiff's RFC and found that Plaintiff can perform light work where she lifts or carries twenty pounds occasionally and ten pounds frequently, stands or walks for six of eight hours during the workday, and sits for six of eight hours during the workday. Tr. 18-19. The ALJ rejected Plaintiff's hearing testimony that she was unable to sit or stand for longer than one hour at a time, relying instead upon the opinion of consultative examiner Dr. Joynes that showed "full strength and normal walking," and other medical testing in the record that similarly showed "full strength and a normal gait." Tr. 19-20.

The ALJ gave the opinions of state medical consultants Dr. Simpkins and Dr. Briski "some weight" (e.g., that Plaintiff could perform light work only with four-hour limits as to standing/walking), but ultimately found that such limitations were not supported by the record as a whole, relying again on medical testing that showed "full strength and a normal gait." Tr. 20. The ALJ's discussion of Plaintiff's mental

7

health impairments in his RFC assessment at Step Four is extremely brief and limited to a finding that her mental status examinations "showed stability and the claimant self-reported recovering from low moods." *Id.*

The ALJ found that Plaintiff is capable of performing past relevant work as a day care teacher, server, and deli clerk. At Step Five, the ALJ determined that there are also other jobs that exist in the national economy that Plaintiff can perform, and consistent with the testimony of Vocational Expert Michelle Peters-Pagella, found that Plaintiff could also work as an assembler, hand packer, and sorter. Tr. 21.

## ANALYSIS

Plaintiff asserts three main arguments in opposition to the ALJ's decision. First, Plaintiff alleges that the ALJ erred in his treatment of her mental health impairments, specifically that he erred in finding her PTSD and depression nonsevere at Step Two, and further erred at Step Four by not assigning appropriate limitations in the RFC assessment to account for the symptoms of her mental health impairments. Next, Plaintiff contends that the ALJ erred by not incorporating other nonexertional limitations in the RFC assessment consistent with all of Plaintiff's severe and nonsevere impairments. Finally, Plaintiff alleges that the ALJ erred in evaluating the additional opinion evidence in the record, in particular, by giving only some weight to the opinions of state medical consultants Dr. Simpkins and Dr. Briski and not adopting their four-hour walking/standing limitation and postural limitation in the RFC assessment.

a. **Plaintiff's Mental Health Impairments**

Plaintiff's first argument pertains to the ALJ's findings with respect to her mental health impairments, specifically her diagnoses of depression and PTSD by Mr. Fleischman from Inspira Behavioral Health. Indisputably, the ALJ had a vast amount of information to weigh and consider with respect to Plaintiff's mental impairments, including a sizeable number of relevant documents that came from Inspira Behavioral Health regarding Plaintiff's ongoing treatment. The ALJ also appropriately focused his Step Two analysis of Plaintiff's alleged mental disorders on the "Paragraph B" factors. However, the Court cannot conclude at this juncture that the ALJ's ultimate findings with respect to Plaintiff's mental health impairments are supported by substantial evidence.

The information cited by the ALJ in his decision at Step Two to support the finding that Plaintiff did not have a severe mental impairment includes progress and treatment notes that Plaintiff exhibited normal thoughts, had an adequate fund of knowledge, was in a euthymic mood, had an appropriate effect, and was fully orientated. However, the Court is not persuaded that these findings necessarily belie any of the Paragraph B factors as determined by the ALJ. For example, the fact that Plaintiff expressed normal thoughts and demonstrated an adequate fund of knowledge during her mental health checkups does not axiomatically establish that she could understand or apply information in a work setting, nor does the finding that she presented as fully alert and oriented necessarily establish that she could

concentrate while at work and maintain a steady working pace. Tr. 16-17. However, these were rationales adopted by the ALJ. *Id.*

In addition, the Court notes that each of the four Paragraph B factors were expressly considered by Mr. Fleishmann, who determined that Plaintiff had two marked functional limitations (with respect to her ability to understand, remember, or apply information and her ability to interact with others) and one extreme functional limitation (with respect to her ability to maintain concentration, persistence, or pace). Either of these findings would be sufficient to establish the existence of a severe mental impairment. 20 C.F.R. §§ 404.1520(a)(d)(1), 416.920(a)(d)(1). The ALJ gave Mr. Fleishman's findings little weight, but his decision does not provide an adequate or reasonable explanation as to why. The ALJ did not address the fact that Mr. Fleishman provided specific findings with respect to the Paragraph B factors, and instead, merely concluded that progress notes in the record, including from Inspira Behavioral Health, contradicted Mr. Fleishman. *Id.* As discussed, such contradiction is not evident to the Court, and the ALJ's Step Two findings are not supported by substantial evidence.

The Commissioner also concedes that "the ALJ is required to consider the combined effects of all of a claimant's impairment, severe and non-severe, throughout the subsequent steps of the process." Commissioner's Brief at 11 (citations omitted). However, the ALJ barely touched on Plaintiff's mental health impairments and resulting symptoms in the RFC assessment at Step Four. The ALJ

briefly concluded that Plaintiff's statements about the severity of her symptoms were inconsistent with the record because she had self-reported getting down but not staying down, and that she could "perform activities of daily living." Tr. 20. Given the evidence in the record documenting Plaintiff's PTSD and depression, including the diagnoses from Mr. Fleishman, the ALJ's Step Four finding is also not supported by substantial evidence.

On remand, the ALJ shall revisit his decision with respect to Plaintiff's mental health impairments and resulting symptoms. At Step Two, the ALJ shall weigh the specific findings of Mr. Fleishman against the record as whole, and address each of his specific findings with respect to the Paragraph B factors. Then, at Step Four, the ALJ shall revisit his RFC assessment and discuss why additional limitations should or should not be included to account for the severe and nonsevere symptoms experienced by Plaintiff as a result of her mental health impairments.

### b. **Plaintiff's Other Nonexertional Limitations**

Plaintiff's second argument is that the ALJ failed to perform a function-by-function analysis at Step Four in making the RFC assessment, and that such assessment must include limitations for essentially all of her alleged symptoms. Plaintiff's Brief at 20 (stating that the ALJ should have included "[a]ppropriate limitations in sitting, standing, lifting, and carrying, plus. . .for vision, off-task, absences, due to. . .mental impairments, sleep apnea and kidney disfunction"). In her supporting brief, Plaintiff highlights her own hearing testimony related to three of

11

these symptoms to support of this sweeping argument: her testimony that she is not able to reach her arm over her head because of her left shoulder impairment, her testimony that she has difficulty reading, blurring, tearing, and migraines brought on by her diabetic retinopathy, and her testimony that she has issues with frequent urinary tract infections. *Id.* at 18-20.

The Court is not persuaded by Plaintiff's second argument. The Commissioner correctly points out that the ALJ relied on extensive medical evidence in the record with respect to Plaintiff's left shoulder symptoms, including progress and treatment notes from December 2015 through September 2018, and that such medical evidence, among other things, includes no mention of her inability to reach overhead, states that a September 2018 scan "revealed some tendinopathy and a mild impingement," describes X-rays of her left shoulder as "unremarkable," and concludes that surgery on her left shoulder wasn't needed. Commissioner's Brief at 14 (citations omitted). The Commissioner is also correct that the Vocational Expert testified at the hearing that all of Plaintiff's past relevant work could be performed even if the ALJ had included a restriction of overhead work with her left hand. Tr. 26-27.

The Commissioner is also correct that the ALJ relied on evidence from her eye doctor, Dr. Fineman, that Plaintiff's corrected vision was stable at 20/40, and the fact that Dr. Fineman had only recommended breaks with respect to work done on a computer. Commissioner at 15. The ALJ also noted that the record lacked

evidence of urinary tract infections or abnormal kidney functioning in his decision. Tr. 16. Thus, the Court rejects Plaintiff's argument that the RFC assessment must reflect every one of her alleged symptoms. Instead, the RFC assessment and the limitations included therein must be supported by substantial evidence, and the Court finds that the ALJ's findings with respect to these alleged symptoms were so supported. Plaintiff's second argument fails.

### c. **Opinion Evidence**

Plaintiff's final argument is that the ALJ erred in rejecting the four-hour walking/standing limitation and postural limitation found by state medical consultants Dr. Simpkins and Dr. Briski from the RFC assessment. In fact, the ALJ's RFC assessment includes an expanded maximum walking/standing time of six hours. Tr. 19. In support of this finding, the ALJ stated that "the four hour limitations and the postural activities are not supported since testing in the record showed full strength and a normal gait." Tr. 20. The ALJ cites to progress notes from Cooper University Health. *Id.*

The Court finds that the ALJ's finding is not supported by substantial evidence. Similar to the ALJ's treatment of the Paragraph B factors in light of Mr. Fleishman's opinion, the Court cannot affirm the ALJ's decision to discredit directly relevant evidence in the record pertaining to the relevant issue. The ALJ also does not give a sufficient explanation as to why the opinions of Dr. Simpkins and Dr. Briski should be secondary to more vague and indirect evidence in the record in

determining the maximum amount of time Plaintiff should be expected to be on her feet in a given workday. The Court is also not persuaded that treatment notes stating that Plaintiff exhibited "full strength and a normal gait" contradict the findings of Drs. Simpkins and Dr. Briski. Even more perplexing to the Court is how the ALJ relied on such treatment notes in determining how to draw the line himself at a maximum of six hours instead of four. The ALJ's findings with respect to the six hour limitation of standing and walking in the RFC assessment is not supported by substantial evidence.

On remand, the ALJ shall revisit the RFC assessment and address whether the findings of Dr. Simpkins and Dr. Briski with respect to the four-hour walking/standing limitation and postural limitation should be adopted, and if not, what additional evidence in the record justifies any modifications made to such limitations in the RFC assessment.

## IV. CONCLUSION

The Court concludes that remand, as opposed to reversal, is appropriate. On remand, consistent with the Court's Opinion, the ALJ shall revisit Step Two of the five-step, sequential analysis, and determine whether Mr. Fleishman's opinion regarding the Paragraph B factors and Plaintiff's mental health impairments warrants additional findings as to severe impairment. The ALJ shall also revisit Step Four of the analysis and revise the residual functional capacity assessment to reflect Plaintiff's severe and nonsevere symptoms resulting from her mental health

impairments, as well as determine whether the specific findings of Dr. Simpkins and Dr. Briski with respect to the four-hour walking/standing limitation and postural limitation should be adopted. Based on the revised RFC assessment, the ALJ shall then revisit the Step Five determination as to what occupations Plaintiff can perform and whether a sufficient number of jobs in such occupations exist in the national economy. The ALJ may very well reach the same conclusion on remand, but the ALJ's consideration of the foregoing issues will provide a sufficient development of the record and permit meaningful review if necessary.

For the foregoing reasons, the Court **vacates** the decision of the ALJ and **remands** for proceedings consistent with the above analysis.

An accompanying Order shall follow.

Date: October 26, 2021

RENÉE MARIE BUMB, U.S.D.J.